IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JULIE A. ORI,<br><br>  Petitioner,<br><br><br><br>  vs.<br><br><br>MICHAEL J. ASTRUE, in his capacity as Commissioner of the Social Security Administration,<br><br>  Respondent. | MEMORANDUM OPINION<br>AND ORDER<br><br><br><br><br>Case No. 2:06-CV-00257 |

Julie Ori appeals the decision of the Social Security Commissioner denying her application for social security disability benefits.  Having considered the parties' briefs, the administrative record, and the relevant law, the Court AFFIRMS the Commissioner's decision.

## LEGAL STANDARDS

This Court's review is guided by the Act, and is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Madrid v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005).  This Court "may neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d); see Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (providing that both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that she is not only unable to perform past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844, 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments.  20 C.F.R., Pt. 404, Subpt. P, App. 1.  If a claimant's impairment does not meet or equal a listed impairment, the Commissioner assess the claimant's residual functional capacity ("RFC").  20 C.F.R. §§

404.1520 (e), 416.920(e).

After determining the claimant's RFC, the Commissioner evaluates steps four and five, determining whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001).  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within the claimant's capacity. Haddock v. Apfel, 196 F3d 1084, 1088 (10th Cir. 1999).

## BACKGROUND

On December 11, 2002, Petitioner filed her application for Disability Insurance Benefits under Title II of the Social Security Act.  42 U.S.C. §§ 401-433.  (Tr. at 60-62.)   Petitioner alleges she became disabled on September 19, 2002, due to limitations resulting from a "heart murmur with leakage, congestive heart failure, chronic fatigue syndrome, sleep apnea, oxygen, right eye partially blind, thyroid problems, and acid reflux." (Tr. at 89.)  Petitioner was 47 years old on the date she alleges she became disabled, and was 49 years old on the date of the ALJ's decision.  She has a high school education and previously worked as a police officer, a security officer, and a clerk/cashier.

A hearing was held on September 6, 2004, before Administrative Law Judge Donald R. Jensen.  By written decision, dated May 17, 2005, the ALJ determined that Petitioner had not performed substantial gainful activity since her alleged onset of disability.  (Tr. at 24.)  He found that Petitioner had numerous severe impairments including congestive heart failure with valvular

3

heart disease (mild), chronic fatigue syndrome, lower-extremity edema and memory deficit.  (Tr. at 24.)  However, the ALJ determined Petitioner did not have an impairment or combination of impairments that met or equaled the impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments.  (Tr. at 18.)

The ALJ found Petitioner's testimony of subjective complaints and functional limitations unsupported by the evidence as a whole and therefore not credible.  (Tr. at 25.)  The ALJ discussed the medical records and medical opinions of Petitioner's physicians including, but not limited to, Dr. Max G. Morgan, Dr. Wang Ying and Dr. Peter J. Casterella, and gave "little weight" to the opinion of Petitioner's treating physician, Dr. Max Morgan.  In addition, the ALJ reviewed and discussed the psychological evaluation of A.L. Carlisle, Ph.D; the functional capacity evaluation by Dell C. Felix, P.T.; and the reports of the non examining medical consultants and examiners at the state agency.[1]  (Tr. at 23.)

Thereafter, the ALJ determined that Petitioner had the residual functional capacity (RFC) for a limited range of light exertion, with standing/walking limited to two hours during an eight-hour workday and a need to avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation.  (Tr. at 23.)  The ALJ concluded that Petitioner could not perform her past relevant work.  (Tr. at 24.)  Finally, the vocational expert testified that Petitioner could perform other work available in the national economy.  Therefore, the ALJ found Petitioner was not disabled within the meaning of the Act, and denied her application.  (Tr. at 26.)  On January 27, 2006, the Appeals Council denied Petitioner's subsequent request for review, making the ALJ's May 17,

---

[1]The medical evidence was summarized in the ALJ's decision and is not repeated here except as necessary to address the issues presented.

4

2005 decision the Commissioner's final decision for purposes of judicial review.  See 42 U.S.C.

§ 405(g); 20 C.F.R. §§ 404.981, 416.1481; Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir.

2003).

## DISCUSSION

Petitioner claims that in the administrative proceedings below, the ALJ committed

several errors.  First, Petitioner claims the ALJ erred by failing to identify all of her severe

impairments.  Second, Petitioner claims the ALJ erred by failing to discuss why she did not meet

or equal a listing.  Third, Petitioner claims the ALJ erred in his assessment of her residual

functional capacity by: improperly analyzing her credibility; giving "little weight" to the opinion

of her treating physician; and failing to consider all of her impairments.  Fourth, Petitioner

claims that, relying on the erroneous RFC, the vocational expert provided faulty testimony

regarding the availability of jobs in the national economy.  Finally, Petitioner claims that the

ALJ erred in failing to find her disabled as a matter of law due to the "combined severity of [her]

several impairments."  (Pet.'s Mem. at 2.)  For the reasons stated below, the Court finds that

none of Petitioner's arguments have merit, and the ALJ's decision should be affirmed.

### 1.      The ALJ's Severe Impairment Findings at Step 2

Petitioner alleges that the ALJ erred by failing to identify all of her severe impairments.

At step two of the five step analysis, the ALJ found that Petitioner had the following severe

impairments: congestive heart failure with valvular heart disease (mild), chronic fatigue

syndrome, lower extremity edema, and memory deficit.  (Tr. at 16.)  He also found that

Petitioner had not met her burden of proving that her other alleged impairments, including left

knee arthritis, hypokalemia (low potassium), unspecified viral syndrome, suspected

fibromyalgia, depression and panic attacks, were severe impairments.  (Tr. at 16.)  In her petition

before this Court, Petitioner claims that beyond the impairments specifically identified and listed

by the ALJ, the following impairments should also have been considered and found "severe":

carpal tunnel syndrome, partial right eye blindness, hypothyroidism, nocturnal hypoxemia, and

chronic Epstein-Barr virus condition.  (Pet.'s Mem. at 14-16.)

   "A medically determinable impairment or combination of impairments is severe if it

significantly limits an individual's physical or mental ability to do basic work activities."  20

C.F.R. § 404.1520.  A claimant bears the burden at step two to present evidence that he has a

medically severe impairment or combination of impairments.  Bowen v. Yuckert, 482 U.S. 137,

146 & n.5 (1987).  Although the Tenth Circuit has referred to the claimant's necessary showing

as "de minimus," the court has clarified that the claimant "must show more than the mere

presence of a condition or ailment."  Hinkle v. Apfel, 132 F.3d 1349, 1351 (10th Cir. 1997).

   a.  Carpel Tunnel Syndrome

   Petitioner claims the ALJ erred by failing to find her carpal tunnel syndrome was a

severe impairment.  The ALJ noted that Petitioner had carpal tunnel surgery on September 11,

2001, and was still recovering when she visited Dr. Morgan on November 8, 2001.  However,

the ALJ also noted that on January 10, 2002, Dr. Morgan stated in writing that Petitioner had

"undergone a complete workup and evaluation for multiple problems and is now essentially

cleared from all of her medical problems including hypothyroidism, hypertension, carpal tunnel

syndrome, chest pain which was worked up and she has been cleared as far as cardiac status."

(Tr. at 18.)  At that time Dr. Morgan indicated that Petitioner could return to "full duty."  (Tr. at 18, 125.)

Additionally, the medical records reveal that Petitioner received little or no follow-up care after the 2001 surgery, suggesting that the surgery accomplished its purpose.  See Campbell v. Bowen, 822 F.2d 1518, 1522 (10th Cir. 1987) (providing the ALJ may discount allegations of disabling impairment when the claimant seeks minimal medical treatment).  Moreover, Petitioner does not appear to have mentioned any problems with her hands and/or wrists during any of her numerous medical appointments from November 8, 2001 until the social security examination in February 2003.  In light of these facts and the absence of any medical evidence to support Petitioner's claim, the ALJ did not err in failing to find that Petitioner's carpal tunnel syndrome was a severe impairment.

          b.       Partial Vision in Right Eye

Petitioner also asserts that the ALJ should have found the partial vision in her right eye was a severe impairment because it allegedly interferes with her equilibrium, causing her to bump into things and fall.  (Pet.'s Mem. at 15.)  However, other than Petitioner's own testimony, the record is void of evidence to support Petitioner's claim of a severe vision impairment or that any such impairment affects her equilibrium.  In 1999, a visual examination revealed only that Petitioner was farsighted without mentioning any vision loss, and there is no evidence that Petitioner sought treatment for her vision after 1999.  The functional capacity evaluation revealed no deficits attributable to an alleged loss of vision, and Petitioner did not complain of eye problems during the evaluation when listing her ailments.  (Tr. at 166 -82.)  Similarly, the

examiners at the state agency found Petitioner had no visual limitations during its evaluation.

Finally and significantly, Petitioner was able to work as a police officer prior to 2002, without

any problems attributable to her alleged eye impairment. (Tr. at 166.)

        c.      <u>Hypothyroidism</u>

Petitioner claims the ALJ erred in failing to find her hypothyroidism was a severe

impairment. While the medical records confirm that Petitioner has hypothyroidism, the record

does not attribute any limitations to this condition. In his January 10, 2002 notes, Dr. Morgan

confirms Petitioner's condition, but further states that she has been "cleared from all of her

medical problems including hypothyroidism." (Tr. at 125.) Additionally, the medical evidence

suggests that any problems associated with Petitioner's hypothyroidism have been episodic and

are amenable to treatment with proper medication. <u>See</u> <u>Kelley v. Chater</u>, 62 F.3d 335, 338 (10th

Cir. 1995) (providing that an impairment which could reasonably be alleviated by medication or

treatment could not serve as the basis for a finding of disability). The mere presence of a

condition, without proof that the condition limits basic work activities, is insufficient for a step-

two showing. <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1100 (10th Cir. 2003).

        d.      <u>Nocturnal Hypoxemia</u>

Similarly, Petitioner claims the ALJ erred in failing to find her nocturnal hypoxemia was

a severe impairment. Given the numerous impairments Petitioner has experienced over her

lifetime, it is not surprising that the record contains relatively little evidence and/or discussion

regarding Petitioner's sleep condition. Although Petitioner's various health care providers make

occasional reference to Petitioner's "sleep apnea" or "possible sleep disordered breathing," aside

from Petitioner's self reporting, the only medical evidence substantiating her sleep impairment consists of the January 22-23, 2002 sleep diagnostic testing.  The records from Rocky Mountain Sleep Diagnostics, Inc. confirm that Petitioner has "nocturnal hypoxemia" but does not suffer from apnea.  (Tr. at 21, 284.)  These records do not identify any limitations associated with this diagnosis, and indicate that the condition is amenable to treatment with nighttime oxygen.  Although this evidence supports a finding that Petitioner has nocturnal hypoxemia, Petitioner has failed to show how this condition would have any more than a minimal effect on her ability to work.  See Williamson, 350 F.3d at 1097; Hinkle, 132 F.3d at 1352.

        e.      Chronic Epstein Barr Virus

Finally, Petitioner claims that the ALJ erred in failing to conclude that the presence of the Epstein-Barr virus was a "severe" condition.  The ALJ carefully reviewed the medical evidence regarding Petitioner's elevated Epstein-Barr titers and Dr. Morgan's conclusion that the Epstein-Barr virus was diagnostic of Chronic Fatigue Syndrome (CFS).  (Tr. at 17.)  Although the ALJ cited medical evidence challenging Dr. Morgan's opinion that the presence of the virus was diagnostic of CFS, the ALJ nonetheless found that Petitioner suffered from chronic fatigue syndrome and determined that it was a severe impairment.  (Tr. at 24.)  However, having reached this conclusion, there was no reason for the ALJ to have found that the Epstein Barr virus, standing alone, was a severe impairment independent of Petitioner's Chronic Fatigue Syndrome.

For the foregoing reasons, the Court concludes that the ALJ's findings with regard to Petitioner's severe impairments are supported by substantial evidence.

### 2.      Failure to Identify and Discuss a Listing at Step Three

At step three of the five-step sequential process the ALJ determined that Petitioner's impairments, alone or in combination, did not meet or equal the severity of a listed impairment. (Tr. at 18.)  Relying on Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996), Petitioner asserts that the ALJ's decision must be reversed because he failed to "identify the listing or listings relevant to the claimant's impairment, discuss the evidence regarding those listings, and give reasons for the conclusion that claimant's condition does not meet or equal those listings." Id. at 1009 (providing that failure identify the listings, discuss the relevant evidence and give reasons for the step-three conclusion is reversible error).

In response, the Commissioner relies on Fischer-Ross v. Barnhart, 431 F.3d 729, 730 (10th Cir. 2005), wherein the Tenth Circuit explained that "Clifton sought only to ensure sufficient development of the administrative record and explanation of findings to permit meaningful review." Id. at 734.  More specifically, the Tenth Circuit provided that where the "ALJ's confirmed findings at step four and five of his analysis, coupled with the indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listing at step three . . . any deficiencies in the ALJ's articulation of his reasoning to support his step three determination is harmless." Id.; see also Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (providing harmless error standard may be appropriate to supply a missing dispositive finding in a social security disability finding, where, based on the material the ALJ considered, the court can confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way).

Petitioner "has the burden at step three of demonstrating, through medical evidence, that [her] impairments 'meet *all* of the specified medical criteria' contained in a particular listing." Riddle v. Halter, 10 Fed.Appx. 665, 666-67 (10th Cir. 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).  While Petitioner asserts the ALJ should have considered sections 3.10, 4.02 and 12 of the listings, the record is void of evidence which would support a finding under those sections.  Although it would have been better for the ALJ to have stated the specific listings he considered, and to have identified specific criteria which were not met for each listing, the decision is sufficiently clear and detailed to establish that Petitioner did not meet her step three burden of proof and did not meet or equal a listing.  In addition, as will be explained in greater detail below, the Court finds that substantial evidence supports the ALJ's conclusions at steps four and five, precluding Petitioner's qualification under a listing at step three.  See Fischer-Ross, 431 F.3d at 734.  Accordingly, the Court finds no reversible error in the ALJ's step three determination.

> **3.     RFC Determination**

Petitioner challenges the ALJ's residual functional capacity determination, claiming it was incomplete and erroneous.  Specifically, Petitioner argues that the ALJ erred in finding that she lacked credibility, in giving "little weight" to Dr. Morgan's opinion, and in failing to account for all of her limitations.

> **a.     Credibility Assessment**

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  Hackett v. Barnhart,

395 F.3d 1168, 1173 (10th Cir. 2005).  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kelper are satisfied."  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ thoroughly considered the record before concluding that the evidence did "not support Petitioner's testimony of subjective complaints and functional limitations in the disabling degree alleged."  (Tr. at 25.)  The ALJ's reasons for discounting Petitioner's testimony are readily apparent within the ALJ's opinion, and are supported by the evidence.  For example, as the ALJ noted, Petitioner claimed her concentration was poor and she had cognitive deficits, yet she was able to read one to two hours per day.  (Tr. at 340.)  Further, Dr. Carlisle noted that his testing of Petitioner showed no concentration or memory deficits, and that Petitioner only displayed confusion as to the population of some cities.  (Tr. at 162.)  Moreover, although Petitioner claimed she was disabled, she also testified that she played with her dogs, and told Dr. Carlisle that she could do light yard work.  (Tr. at 162, 328.)  Additionally, the ALJ considered Petitioner's failure to follow through with recommended treatment (e.g., going off Premarin without consulting her doctor and failing to stop smoking despite dyspnea and hypoxemia), which also negatively affected her credibility.  Given these specific findings, the Court concludes that the ALJ's credibility determination is legally sufficient and supported by substantial evidence.

b.      Evaluation of Treating Physician's Opinions

"The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  When an ALJ rejects a treating physician's opinion, he must articulate "specific, legitimate reasons for his decision."  Id.

In this case, the ALJ set forth numerous specific, legitimate reasons for giving "little weight" to Dr. Morgan's opinions.  The ALJ explicitly stated that he found Dr. Morgan's opinions to be conclusory, not supported by, and out of proportion with the objective medical record including a very thorough function capacity evaluation.  (Tr. at 23.)  He further explained that Dr. Morgan's treatment notes were based "to an inappropriate degree" on the claimant's subjective complaints.  Additionally, the ALJ found that Dr. Morgan's opinions were intended to support Petitioner's applications for long-term, private-insurance disability, which uses a different standard.  (Tr. at 23.)  Moreover, the ALJ stated that to the extent Dr. Morgan's opinions concerned entitlement to Social Security benefits, they were legal opinions, on issues reserved to the Commissioner.  (Tr. at 23-24.)  20 C.F.R. § 404.1527(e) (providing that opinions regarding the ultimate issue of disability are reserved to the Commissioner).  In light of these specific and legitimate reasons, the Court finds that the ALJ's decision provides a legally sufficient and factually supported basis for giving "little weight" to Dr. Morgan's opinions.

c.      Consideration of All Petitioner's Limitations in RFC

Finally, Petitioner argues that the RFC assessment was incomplete because the ALJ

failed to account for all of her limitations.  This argument appears to be based, to some extent, on Petitioner's earlier arguments, challenging the ALJ's finding that some of her impairments were not severe and rejecting her subjective complaints.  (Pet.'s Mem. at 22-23).  The Court has already discussed these arguments and determined that substantial evidence supports the ALJ's findings in these areas.

Moreover, this Court's independent review of the record confirms that the ALJ's RFC assessment included consideration of many of Petitioner's subjective claims and accounted for all of the factors that were supported by the medical evidence.  For example, the functional capacity evaluation stated: "by lifting thirty pounds and carrying forty pounds, [Petitioner] met the LIGHT Physical Demand Characteristic of Work Level . . . according to the U.S. Department of Labor."  (Tr. at 170.)  However, after considering all the evidence and Petitioner's testimony, the ALJ determined that Petitioner had *less* than the full capacity for light work, and also found that Petitioner needed a sit-stand option.  (Tr. at 25.)  Similarly, although the psychological evaluation failed to identify any mental defect or impairment, in light of Petitioner's claims, the ALJ limited Petitioner to unskilled work.  Accordingly, and for reasons previously explained in earlier sections, the Court finds that substantial evidence supports the RFC determination.

### 4.      Vocational Expert's Testimony

Petitioner argues that the vocational expert was deprived of "essential foundational information" because the hypothetical question posed to the expert did not include all of her limitations.  (Pet.'s Br. at 23.)  A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the

hypothetical inquiries to the expert.  Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993).  The
ALJ is required to accept and include in the hypothetical question only those limitations
supported by the record.  Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999).  Once again,
Petitioner's argument rests on her previous claims.  Having already determined that substantial
evidence supports the ALJ's findings with regard to Petitioner's severe impairments and RFC,
the Court concludes that the ALJ's hypothetical question to the vocational expert, which was
based on these earlier findings, adequately reflected Petitioner's limitations that were supported
by the record.  See Shepherd, 184 F.3d 1203.  Thus, the vocational expert's testimony provided a
proper basis for the ALJ's disability decision.

### 5.       Combined Effects of Petitioner's Impairments

Finally, Petitioner argues that the ALJ erred by failing to find that Petitioner was disabled
as a matter of law due to the combined effect of all of her impairments.  See 20 C.F.R. §
404.1523 ("In determining whether your physical or mental impairment or impairments are of a
sufficient medical severity that such impairment or impairments could be the basis of eligibility
under the law, we will consider the combined effect of all of your impairments without regard to
whether any such impairment, if considered separately, would be of sufficient severity."); see
also SSR 96-8p, 1996 WL 374184, at *5.  Review of the ALJ's decision indicates that the ALJ
considered the combination of impairments as he was required to do.  The ALJ's decision was
made after a thorough review of the medical evidence of record, and the fact that each element of
the record was discussed individually hardly suggests that the totality of the record was not
considered, particularly in view of the fact that the ALJ specifically referred to a "combination of

medically determinable impairments" in deciding that Petitioner did not meet a listing.  (Tr. at 18.)  Moreover, although the ALJ's decision does not state in so many words that he considered the effect of the combination of Petitioner's impairments, the fact that many of Petitioner's impairments are interrelated and overlapping effectively required the ALJ to consider Petitioner's impairments in combination.  Thus, the Court concludes that after reviewing the ALJ's decision as a whole, the ALJ sufficiently considered the combined effect of all Petitioner's impairments.  See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (holding that ALJ sufficiently considered impairments in combination where he separately discussed each impairment and made a finding that the impairments did not prevent past relevant work); Gooch v. Secretary of H.H.S., 833 F.2d 589, 592 (6th Cir. 1987) (concluding that ALJ's reference to "impairments" and "the record as a whole" satisfied requirement to consider combination of impairments, and requiring a "more elaborate articulation of the ALJ's thought processes would not be reasonable"), cert. denied, 484 U.S. 1075 (1988.)

## CONCLUSION

Having determined that the Secretary's decision is supported by substantial evidence and no legal errors occurred, the Secretary's decision is AFFIRMED.

It is so ordered.

Dated this 7th day of September, 2007.

_____
Dee Benson
United States District Court Judge

16